IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-68

**JOHN M. ABBATIELLO,**

        Plaintiff,

   vs.

**BAYER CORPORATION DISABILITY
PLANS, BAYER CORPORATION, and
MATRIX ABSENCE MANAGEMENT,
INC.,**

        Defendants.

## COMPLAINT

### PARTIES

1.     Plaintiff, John M. Abbatiello, is a citizen and resident of Waxhaw, Union County, North Carolina.

2.     Upon information and belief, Defendant Bayer Corporation Disability Plans is an employee welfare benefit plan organized and existing pursuant to 29 U.S.C. § 1002(1), and includes the Bayer Corporation Long-Term Disability Plan under which Plaintiff received disability benefits (the Bayer Corporation Disability Plans and the Bayer Corporation Long-Term Disability Plan will be referred to collectively as the "Plan"). The express purpose of the Plan is to provide eligible employees with certain disability benefits.

3.     Upon information and belief, the Plan is funded by Defendant Bayer Corporation (hereafter, "Bayer").

4.     Upon information and belief, Bayer is the Plan Sponsor.

5.     Upon information and belief, Bayer serves as the Plan Administrator.

6.      Upon information and belief, Bayer has delegated the authority of the plan administrator to make determinations of disability to the Bayer Corporation ERISA Review Committee (hereafter, the "Committee").

7.      Upon information and belief, the Committee is the entity responsible for deciding appeals of denial of disability benefits under the Plan.

8.      Upon information and belief, the members of the Committee are Bayer employees and executives.

9.      The Committee has a fiduciary obligation to Plaintiff to administer the Plan fairly and impartially, for the exclusive benefit of beneficiaries such as Plaintiff.

10.     Upon information and belief, the actions of the Committee, as alleged in this Complaint, were taken within the scope of its agency relationship with the Plan and Bayer, so that its acts and omissions are imputed to the Plan and Bayer.

11.     Upon information and belief, Matrix Absence Management, Inc. ("Matrix") serves as Bayer's third-party claims administrator and provides administrative and claims processing services to the Plan.

12.     Matrix has a fiduciary obligation to Plaintiff to administer the Plan fairly and impartially, for the exclusive benefit of beneficiaries such as Plaintiff.

13.     Upon information and belief, the actions of Matrix, as alleged in this Complaint, were taken within the scope of its agency relationship with the Plan and Bayer, so that its acts and omissions are imputed to the Plan and Bayer.

14.     Bayer has a fiduciary obligation to Plaintiff to administer the Plan fairly and impartially, for the exclusive benefit of beneficiaries such as Plaintiff.

2

15.    This Court has jurisdiction to hear this claim pursuant to 28 U.S.C. § 1331, in that

the claim arises under the laws of the United States. Specifically, Plaintiff brings this action to

enforce his rights under ERISA, as allowed by 29 U.S.C. § 1132.

16.    Venue in the Western District of North Carolina is appropriate by virtue of

Plaintiff's residence in this district and Defendants' doing business in this district.

FACTUAL ALLEGATIONS

17.    At all times relevant to this action, Plaintiff was a covered beneficiary under the

Bayer Corporation Long-Term Disability Plan issued by Bayer (the "Policy").

18.    Plaintiff worked as a Mechanic for Bayer prior to his disability onset.

19.    The Plan provides LTD benefits to beneficiaries who meet the Policy's definition

of "disability" or "disabled," as follows:

> *Disability means that you are under the care of a physician whose specialty or*
> *experience is appropriate for your condition and, based on objective medical*
> *evidence of your illness or injury, you are unable to do your job, or, after receiving*
> *long term disability benefits for 18 months, you are unable to do any job for which*
> *you are or could become qualified. You must provide objective medical evidence,*
> *satisfactory to the company or its delegate in its sole discretion, to support your*
> *initial claim for, and continuing eligibility to receive, disability benefits.*

20.    Plaintiff initially left work in November 2009 due to back pain and remained out

of work until May 13, 2010, at which time he returned to work on modified duty.

21.    Plaintiff's return to work lasted a mere seven days, as he began to experience an

increase in the severity of his back pain, which also began to radiate to both buttocks and thighs.

22.    On or about May 20, 2010, Plaintiff was forced to stop working and leave

employment with Bayer permanently due to increasingly severe back pain, which was determined

to be caused by lumbar spondylosis, lumbar foraminal stenosis, and lumbar radiculopathy.

3

23.     As a result of his numerous and severely disabling conditions, Plaintiff was unable to perform the essential duties of his occupation as a Mechanic, which included, but were not limited to, maintaining, repairing, and installing mechanical equipment.

24.     By letter dated May 19, 2010, Matrix approved Plaintiff's LTD benefit claim, determining that Plaintiff was unable to perform the essential duties of his occupation, and began paying LTD benefits.

25.     In or around October 2010, Matrix notified Plaintiff that, to be eligible for LTD benefits beyond six months of disability, he must be disabled from any job for which he is or could become qualified.

26.     By letter dated October 22, 2010, Matrix notified Plaintiff that it determined he was disabled from any job for which he is or could become qualified.

27.     In 2013, Plaintiff underwent a MRI which revealed lumbar spondylosis and lumbar foraminal stenosis.

28.     Despite treatment with various drug therapies, including narcotic pain medication, and undergoing epidurals, trigger point injections, physical therapy, and facet blocks, Plaintiff continues to suffer from constant and debilitating pain in both his lower back and extremities.

29.     Plaintiff also suffers from upper back and neck pain, *i.e.*, cervical spine pain, which often radiates to his shoulders, head, and upper extremities.

30.     In addition to his continuing severe pain attributable to his back, Plaintiff has developed a serious heart condition. On or about November 2, 2015, Plaintiff suffered a heart attack and was thereafter diagnosed with severe three-vessel disease.

31.     Plaintiff suffers from numerous conditions, including, but not limited to:

        a.      Lumbar spondylosis;

4

b.      Foraminal stenosis of lumbar spine;

c.      Lumbar radiculopathy;

d.      Chronic back pain;

e.      Cervical degenerative disc disease;

f.      Foraminal stenosis of cervical spine;

g.      Cervical radiculopathy;

h.      Severe three-vessel disease/diffuse coronary disease;

i.      Hypertension;

j.      Hyperlipidemia;

k.      Insomnia; and

l.      Sleep apnea.

32.      As a result of these conditions, Plaintiff continues to experience severe pain in both his upper and lower back, headaches, neck pain, shoulder pain, muscle spasms, numbness in the feet and legs, bowel incontinence, insomnia, pain radiating into the extremities, limited range of motion, an inability to sit or stand for prolonged periods of time, fatigue, chest discomfort, shortness of breath, and class III angina.

33.      As a result of his numerous and severe disabling conditions and the accompanying symptoms, Plaintiff is unable to do any job for which he is or could become qualified for.

34.      By letter dated November 21, 2016, Matrix terminated Plaintiff's LTD benefit claim as of November 1, 2016.

## THE ADMINISTRATIVE APPEAL PROCESS

35.      Plaintiff timely appealed the termination of his LTD benefits to the Committee by

letter dated May 5, 2017, submitting argument and supporting documentation including supportive letters from Plaintiff's treating physicians and family members, as well as updated medical records.

36.     As of the filing of this Complaint, Defendants have failed to make a determination upon review of Plaintiff's administrative appeal.

37.     The Department of Labor regulation established to protect procedural fairness in ERISA claims such as Plaintiff's was enabled under Section 409 of ERISA, and is codified at 29 C.F.R. § 2560.503-1 (hereinafter, the "Regulation").

38.     The Regulation requires that a plan administrator provide a claimant with the plan's benefit determination on administrative appeal within a reasonable period of time, but not later than 45 days after receipt of the claimant's request for review by the plan. 29 C.F.R. § 2560.503-1(i)(3)(1).

39.     The Regulation provides that the plan administrator may have an additional 45 days to render a decision on the administrative appeal if the following conditions are satisfied:

        a.      The extension of time must be for "special circumstances" (such as the need to hold a hearing, if the plan's procedures provide for a hearing);

        b.      Written notice of the extension must be furnished to the claimant before the termination of the initial 45-day period;

        c.      The extension notice must indicate the special circumstances requiring an extension of time; and

        d.      The date by which the plan expects to render the determination on review.
29 C.F.R. §§ 2560.503-1 i(1) and (i)(3)(1).

40.     Courts have held that an extension beyond 45 days can only be imposed for

reasons beyond the control of the plan — which would <u>not</u> include delays caused by cyclical or seasonal fluctuations in claim volume, or the need for physician and vocational review. *Salisbury v. Prudential Ins. Co. of Am.*, 238 F. Supp. 3d 444, 450 (S.D.N.Y. Feb. 28, 2017) (holding that "virtually every appeal of the denial of a disability benefits claim will require 'physician and vocational review,' and thus this cannot constitute a valid 'special circumstance'"); *Hancock v. Aetna Life Ins. Co.*, 251 F. Supp. 3d 1363, 1374 (W.D. Wash. 2017) (holding that Aetna unreasonably delayed the claimant's appeal by invoking a 45-day extension to allow for completion of a peer review).

41.     The Regulation allows a maximum of 90 days to render a decision on an administrative appeal. 29 C.F.R. § 2560.503-1(i)(3)(i).

42.     The Policy explicitly provides:

> The plan administrator shall notify you of the plan's benefit determination on review within a reasonable period of time, but not later than 45 days after receipt of your request for review by the plan, unless the plan administrator determines that special circumstances require an extension of time for processing the claim. If the plan administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to you prior to the termination of the initial 45-day period. In no event shall such extension exceed a period of 45 days from the end of the initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review.

43.      Defendants received Plaintiff's administrative appeal on May 8, 2017.

44.     Pursuant to the Regulation and the plain terms of the Policy and Plan, Defendants' deadline to notify Plaintiff of the Plan's benefit determination on review expired on or before June 22, 2017.

45.     By letter dated June 12, 2017, Plaintiff was notified that the Committee required he undergo an independent medical examination ("IME") on June 26, 2017. Plaintiff attended the

IME on June 26, 2017.

46. By letter dated June 19, 2017, the Committee informed Plaintiff that it was extending the time to render a determination on review and that a decision would now be rendered on or before August 6, 2017. The sole justification for the extension was that additional time was "required to consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment."

47. By letter dated August 2, 2017, Matrix requested from Plaintiff the reports of MRIs that occurred in 2010 and 2013.

48. By letter dated August 4, 2017, Plaintiff responded to Matrix's August 2, 2017 correspondence, stating that Matrix possessed a medical authorization signed by Plaintiff that could be used to obtain the requested records.

49. By letter dated August 10, 2017, the Committee informed Plaintiff that it deferred consideration of Plaintiff's administrative appeal until the MRI reports are received and reviewed by the IME physician.

50. By letter dated August 15, 2017, Plaintiff was notified that the Committee required he undergo MRI testing on August 24, 2017. Plaintiff underwent the MRI on August 24, 2017.

51. The August 24, 2017 MRI revealed that Plaintiff's degenerative changes are more severe as compared to the 2013 MRI and his spine degeneration had expanded to include edema.

52. By letter dated October 31, 2017, the Committee provided Plaintiff with a copy of the MRI report dated August 24, 2017, the IME results, and peer review reports. The Committee informed Plaintiff that he had until November 27, 2017 to submit a response.

53. By letter dated November 27, 2017, Plaintiff responded to the Committee's October 31, 2017 correspondence and accompanying materials.

8

54.     Defendants impermissibly delayed investigation of Plaintiff's symptoms related to his cervical spine by failing to obtain a total spine MRI on August 24, 2017 because Plaintiff's condition related to his cervical spine was already known by Defendants.

55.      Plaintiff underwent a MRI of his cervical spine on December 7, 2017, which revealed moderate to severe cervical foraminal stenosis and cervical degenerative disc disease. By letter dated December 14, 2017, Plaintiff provided the Committee with a copy of the MRI report.

56.     By letter dated January 9, 2018, the Committee informed Plaintiff that he must undergo a functional capacity evaluation ("FCE").

57.     By letter dated January 25, 2018, Plaintiff notified the Committee that its FCE request was unreasonable, unnecessary, and untimely, and as such, he would not undergo the testing.

58.     By letter dated January 29, 2018, the Committee responded to Plaintiff's letter dated January 25, 2018, stating that, "If Mr. Abbatiello does not submit to a functional capacity evaluation, he will not be providing satisfactory objective medical evidence requested by the company."

59.     The Regulation provides that if an employee welfare benefit plan, such as Plaintiff's, fails to follow claims procedures consistent with the Regulation, it will, by operation of law, have "fail[ed] to provide a reasonable claims procedure that would yield a decision on the merits of the claim," and a claimant, such as Plaintiff, "[s]hall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act." 29 C.F.R. 2560.503-1(1).

60.     Further, the Policy provides, "In the case of the failure of the plan to follow the claims procedures, you will be deemed to have exhausted the administrative remedies under the

9

plan and shall be entitled to pursue any available remedies under section 502(a) of ERISA."

61.     As of the filing of this Complaint, 278 days have elapsed since the filing of

Plaintiff's administrative appeal. To date, Defendants have not issued a benefit determination

upon review as required by the Regulation and the Policy and Plan and even to this date continue

to demand that further and additional testing take place, continuing to prolong its review with no

end date in sight.

62.     By operation of law and the explicit terms of the Policy and Plan, Plaintiff is

deemed to have exhausted his administrative remedies and is entitled to pursue this action.

63.     Plaintiff now has exhausted his administrative remedies, and his claim is ripe for

judicial review pursuant to 29 U.S.C. § 1132.

**FIRST CLAIM FOR RELIEF:**
**WRONGFUL DENIAL OF BENEFITS**
**UNDER ERISA, 29 U.S.C. § 1132**

64.     Plaintiff reincorporates the preceding paragraphs of the Complaint as if fully restated.

65.     Defendants have wrongfully denied LTD benefits to Plaintiff in violation of the

Policy, Plan, and ERISA for the following reasons:

a.      Plaintiff is disabled, as defined by the LTD benefits Policy and Plan, in

that as a result of his disability, he is unable to do any job for which he is or could

become qualified;

b.      Defendants failed to accord proper weight to the evidence in the

administrative record showing that Plaintiff is disabled, by ignoring credible evidence

that Plaintiff is unable to do any job for which he is or could become qualified;

c.      Defendants' interpretation of the definition of "Disability" or "Disabled"

contained in the Policy is contrary to plain language of the Policy and unreasonable;

d.      Defendants have attempted to evade the impact of Plaintiff's numerous conditions and the severe functional limitations on his ability to perform any job for which he is or could become qualified;

e.      Defendants have wrongfully denied Plaintiff a full, fair, and impartial review of his benefits by ignoring the weight and credibility of evidence submitted, looking for less credible evidence of marginal significance to support its goal of denying his benefits claim; and

f.      Defendants have violated its contractual obligation to furnish LTD benefits to Plaintiff.

**SECOND CLAIM FOR RELIEF:**
**WRONGFUL DENIAL OF BENEFITS UNDER ERISA**
**FOR FAILING TO AFFORD PLAINTIFF**
**HIS ADMINISTRATIVE DUE PROCESS RIGHTS**

66.     Plaintiff reincorporates the preceding paragraphs of the Complaint as if fully restated.

67.     Defendants are required under ERISA and applicable federal regulations to provide Plaintiff with a fair and impartial administrative review process.

68.     Defendants are required under ERISA and applicable federal regulations to provide Plaintiff with a timely notification of a benefit determination on review.

69.     Defendants have wrongfully denied Plaintiff's benefits by failing to afford Plaintiff his administrative due process rights under ERISA for the following reasons:

a.      Defendants wrongfully refused to render a timely decision on Plaintiff's administrative appeal;

b.      Defendants wrongfully refused to reasonably and promptly investigate and process Plaintiff's administrative appeal and supporting documentation;

c.      Defendants wrongfully required that Plaintiff undergo testing that was

unreasonable, unnecessary, and untimely;

       d.      Defendants failed to provide sufficient "special circumstances" to justify an extension of time to decide Plaintiff's administrative appeal;

       e.      Defendants wrongfully provided Plaintiff with a procedurally defective administrative review process;

       f.      Defendants wrongfully refused to consider relevant information submitted by Plaintiff and his medical providers;

       g.      Defendants failed to provide Plaintiff with a date by which he should expect to receive a decision on review;

       h.      Defendants impermissibly applied the wrong definition of "disability" or "disabled" under the terms of the Policy to Plaintiff's claim;

       i.      Defendants wrongfully delayed investigation and payment of Plaintiff's claim although Plaintiff's conditions were already known by Defendants; and

       j.      Defendants wrongfully refused to consider Plaintiff's substantial and compelling evidence that demonstrated Plaintiff remained "disabled" under the terms of the Policy.

70.     As a result of Defendants' actions as described herein, Defendants failed to afford Plaintiff his basic due process guarantees and procedural protections afforded under and required by ERISA and its promulgating regulations.

71.     As a result of Defendants' actions as described herein, even if the Policy or Plan vests discretion in the plan administrator to decide disability claims, which Plaintiff disputes, Defendants have failed to lawfully exercise any discretion they may have had, and Defendants' decision is therefore not entitled to any deference under prevailing law.

## THIRD CLAIM FOR RELIEF:
## BREACH OF FIDUCIARY DUTY
## UNDER ERISA, 29 U.S.C. §§ 1104 & 1132(a)

72.     Plaintiff reincorporates the preceding paragraphs of the Complaint as if fully restated.

73.     At all relevant times alleged herein, Defendants were fiduciaries of the Plan.

74.     Section 404(a)(1)(A) of ERISA,  29 U.S.C. §1104(a)(1)(A), obligates a fiduciary to  discharge their duties "solely in the interest" of a plan's participants and  beneficiaries and for the "exclusive purpose" of providing plan benefits and  defraying reasonable expenses of the Plan.

75.     Section 404(a)(1)(B) of ERISA, 29 U.S.C. §1104(a)(1)(B), obligates a fiduciary to act with the care, skill,  prudence, and diligence under the circumstances then prevailing that a prudent  man acting in a like capacity and familiar with such matters would use in the  conduct of an enterprise of a like character and with like aims.

76.     These ERISA fiduciary duties have been described repeatedly by the courts as "the highest known to the law."

77.     Defendants acted in a  fiduciary capacity when they considered Plaintiff's benefits claim and engaged in the subsequent handling of his administrative appeal.

78.     Defendants breached the fiduciary duties owed to Plaintiff in the following ways:

        a.      By refusing to render a timely decision on Plaintiff's administrative appeal;

        b.      By failing to reasonably and promptly investigate and process Plaintiff's administrative appeal and supporting documentation;

        c.      By requiring that Plaintiff undergo testing that was unreasonable, unnecessary, and untimely;

        d.      By failing to provide sufficient "special circumstances" to justify an

13

extension of time to decide Plaintiff's administrative appeal;

e.     By providing Plaintiff with a procedurally defective administrative review process;

f.     By failing to consider relevant information submitted by Plaintiff and his medical providers;

g.     By failing to provide Plaintiff with a date by which he should expect to receive a decision on review;

h.     By failing to administer the Plan solely in the interest of participants and beneficiaries for the exclusive purpose of providing benefits for the participants and their beneficiaries;

i.     By delaying investigation and payment of Plaintiff's claim although Plaintiff's conditions were already known by Defendants;

j.     By impermissibly applying the wrong definition of "disability" or "disabled" under the terms of the Policy to Plaintiff's claim;

k.     By refusing to consider Plaintiff's substantial and compelling evidence that demonstrated Plaintiff remained "disabled" under the terms of the Policy;

l.     By operating under a conflict of interest; and

m.     By otherwise failing to afford Plaintiff with basic due process guarantees required by 29 U.S.C. § 1133 and the regulations promulgated thereunder.

79.     Through its actions as alleged herein, Defendants breached their fiduciary duties to act prudently and in the sole interest of its participants and beneficiaries.

80.     Upon information and belief, Defendants were unjustly enriched and have profited from their fiduciary breach to Plaintiff.

14

**WHEREFORE**, Plaintiff prays that the Court:

1. Grant Plaintiff declaratory and injunctive relief, finding that he is entitled to LTD benefits under the terms of the Policy, and that Defendants be ordered to pay LTD benefits, and all other related benefits, until such time as he reaches age 65 or is no longer disabled;

2. Declare that Defendants have failed to afford Plaintiff with his administrative due process rights under ERISA;

3. Declare that Defendants have violated the duties, responsibilities, and obligations imposed upon them as fiduciaries under ERISA;

4. Grant Plaintiff extraordinary, equitable, and/or injunctive relief against Defendants, as permitted by law, equity, and the federal statutory provisions set forth herein, including but not limited to restitution, disgorgement, surcharge, and/or other remedial relief;

5. Award pre-judgment interest at a rate of 8%;

6. Award Plaintiff all reasonable attorneys' fees and expenses incurred as a result of Defendants' actions alleged herein; and

7. Award such other and further relief as may be just and appropriate.

This the 7th day of February, 2018.

/s/Caitlin H. Walton

**CAITLIN H. WALTON**
N.C. Bar No. 49246
cwalton@essexrichards.com
**NORRIS A. ADAMS, II**
N.C. Bar No. 32552
nadams@essexrichards.com
**ESSEX RICHARDS, P.A.**
1701 South Boulevard
Charlotte, NC 28203-4727
Ph (704) 377-4300
Fax (704) 372-1357
*Attorneys for Plaintiff*
